not bound to do more than conduct the foreclosure suit honestly, lawfully, and without oppression or deceit, as an adversary proceeding. If his own client were to come in and claim the benefit of the purchase, a very different question would arise; but as to the parties making the present motion the simple question is as to the right of an attorney for an adverse party, whose conduct is perfectly fair and honest, to bid in the premises at a foreclosure sale. That is exactly what was done in *McCotter* v. *Jay*, 30 N. Y. 80, and in that case the purchase was sustained. We have examined the papers used in this motion with care to ascertain if there exists any ground on which to set aside this sale, and can find none. Both the auctioneer and referee swear that it was well and honestly conducted; that the attendance thereat was large; that the bidding was spirited, and there was much competition, no less than 13 different bids having been recorded by the auctioneer in his book. Nothing whatever was done by the attorney of the plaintiff at any time to mislead the defendants, but, on the contrary, all his proceedings were fair, open, and regular. The order must be affirmed, with $10 costs. All concur.

---

## ADAMS *v.* GREEN et al.

(*Supreme Court, General Term, Fifth Department.* January, 1892.)

ASSIGNMENT OF MORTGAGE—RESCISSION—FRAUD—EVIDENCE.

> In an action by a widow over 70 years old to set aside, on the ground of fraud, an assignment to her daughter of a mortgage for over $2,000, which constituted almost her sole estate, it appeared that plaintiff's four sons had received more assistance from her and their father than defendant daughter, and that the provisions of the father's will for the daughter were likely to prove inoperative. Plaintiff testified that she executed the instrument under the false representation of the attorney who drew it that she was assigning only $1,000 thereof. The testimony of the attorney that she said she wished to assign the mortgage, and that he read the assignment carefully to her, was corroborated by the daughter and the attorney's clerk, who were present. The consideration was natural affection, and a request that defendant should move to another city, and allow plaintiff to live with her, which defendant did. At the same time defendant agreed, by written contract, that, if plaintiff should survive her, the mortgage should be reassigned to plaintiff by defendant's legal representatives. *Held*, that the assignment was not procured by fraud.

Appeal from special term, Monroe county.

Action by Matilda Adams against Sarah Jane Green and another to set aside an assignment of a mortgage for $2,250, on the ground that plaintiff intended to assign only an interest of $1,000. The consideration was natural affection, and the request that defendant should move to another city, and allow plaintiff to live with her, which defendant did. Judgment dismissing the complaint. Plaintiff appeals. Affirmed.

Following is the opinion of ADAMS, J., at special term:

"There are some features of this case which, unexplained, would naturally incline a court of equity to look with favor upon the plaintiff's contention. The fact that she, a woman upwards of seventy years of age, has parted with a valuable security which constituted pretty much all her personal estate, without receiving any pecuniary consideration therefor, and that she has thereby deprived herself of a considerable portion of the means of support for her declining years provided by her deceased husband, is of itself one which requires that the court should carefully scrutinize the transaction, with a view to ascertaining if any improper advantage has been taken of the plaintiff. With one's sympathies thus aroused, it would, perhaps, be an easy matter to infer that the defendant had taken advantage of the relation existing between her and her mother, as well as of the opportunity afforded by their living together, to exert an undue influence over her, and by means thereof to obtain from the old lady a larger and more generous provision than was actually intended. But this is an action *ex delicto*. It is founded upon fraud, plain and simple; and fraud which not only involved the defendant, but like-

wise an honorable and reputable officer of this court. It will not do, therefore, to dispose of the case upon inferences merely, unless those inferences have some tangible evidence to support them. What, then, is the evidence upon which the plaintiff bases her contention? It is simply that which she furnishes herself, and which is, in brief, that, with the design of assigning to her daughter an interest in the mortgage in question, she accompanied her to the office of Pierson B. Hulett, a lawyer in the city of Rochester, and a former judge of Monroe county, where she was induced to execute the assignment upon the false and fraudulent representation of Hulett that she was assigning an interest in the mortgage instead of the entire sum secured thereby. There is no direct, and but little, if any, collateral, evidence in the case which tends, in any degree, to corroborate this statement of the plaintiff; but, on the other hand, the presumption as well as the positive evidence in the case all tend to show that the plaintiff's memory is either seriously at fault, or else—and this seems more probable from certain intimations which are furnished by the testimony—that other and stronger wills have so operated upon her mind as to compel her to state that which is not true, however much she may believe it true while living within the range of such influences. It appears from the undisputed evidence that the plaintiff's husband, subsequent to the transfer to her of the mortgage in question, departed this life leaving a last will and testament, in which he made certain bequests to each of his four sons and likewise to the defendant, his daughter; that at the time of her father's death the defendant was living in Buffalo, and that thereafter, at the request of the plaintiff, she moved to Rochester, where the plaintiff took up her residence with her. The defendant was without means of support, and earned her living by keeping boarders. She testifies that in August, 1890, her mother informed her early one morning that she had lain awake all night thinking that she ought to make over this mortgage to her, so that she, the defendant, would not have to work so hard. There is also some evidence tending to show that the boys had received more or less assistance from their father and mother, while the defendant had received scarcely any, and that for some reason, which does not clearly appear, the provision made for the latter in her father's will was likely to prove inoperative. But, whatever may have been the moving cause, we find the parties at Judge Hulett's office on the 28th day of August, where the assignment in question, as well as the agreement hereinbefore referred to, were drawn and executed.

"It appears by the evidence of Judge Hulett that the plaintiff came to his office first alone, and told him that she wished to assign this mortgage to ‘ Jennie; ’ that she thereupon went out, and soon returned with her daughter, when he drew the assignment, ‘read it over carefully to Mrs. Adams, told her what it was, and told her to sign it,’ which she did, and thereupon acknowledged it. This statement, in all its essential features, is corroborated by defendant and a Miss Kendall, who was a clerk in the office. The agreement was then drawn up, and, when executed, was delivered to the plaintiff, and the assignment to the defendant, and the parties thereupon left the office. Shortly thereafter, some question having arisen in the mind of the plaintiff as to the sufficiency of the assignment, it was submitted to Mr. Maurer, another lawyer residing in Rochester, who, as he tells us, advised the parties that the assignment had better be placed upon record. Both there and at Judge Hulett's office the plaintiff had expressed some fear that the boys would make trouble when they heard of what she had done, and the propriety of putting the assignment upon record was discussed in that connection. On the 3d of September the assignment was recorded, and shortly thereafter the fact did come to the knowledge of the boys, whereupon the plaintiff made an effort to procure a reassignment of the mortgage, but, failing in that, brought this action. Thus it will be seen that the direct proof, if it is to be credited, is so overwhelming in its contradiction of the plaintiff as to leave the court

scarcely any opportunity to deliberate upon it. And what is there in the case which tends to weaken this evidence in any material respect? It seems to me there is little or nothing; but that, on the contrary, there are several corroborating facts, circumstances, and presumptions. In the first place, it is not a violent inference, from the evidence in the case, that the plaintiff desired to assist her daughter to the full extent of this mortgage, in view of the fact that she believed she had never received as much as her brothers, and was to be deprived of the legacy in her father's will. Nor is it difficult to imagine to what extent the sons may be responsible for their mother's action when it became known to them that she had transferred the mortgage, while, upon the other hand, it is very difficult for me to believe that an officer of this court, concerning whose character the case is utterly destitute of a shadow of reproach, would not only combine with the defendant to defraud and deceive her mother, but would also come upon the witness stand, and commit deliberate perjury, in order to uphold the fraud. There is another circumstance in the case which is hard to reconcile with the plaintiff's theory, and that is that, after perpetrating the alleged fraud upon the old lady, the defendant published the fact to the world, and invited trouble, by placing her assignment upon record, whereas, had she kept it secret for a short time, it is quite probable her opportunity to become benefited thereby would have been greatly enhanced. It may be that the plaintiff was too generous towards her daughter, and too regardless of her own interests; but I find it impossible, upon all the evidence in the case, to resist the conclusion that the assignment correctly represents her real intention at the time she executed it.

"I am asked by the plaintiff's counsel to regard the assignment which the defendant executed and delivered to her mother as a defeasance, and to treat the two instruments as constituting a testamentary disposition of the mortgage, revocable at plaintiff's pleasure. It is sufficient answer to this contention that no such claim is set up in the complaint. As has already been suggested, this is an action based upon the alleged fraud of the defendant, and there is no other element in it. Indeed, as is conceded by plaintiff's counsel in his brief, the existence of the 'defeasance' was not known to him until after the trial had been commenced. As is already sufficiently indicated, the complaint must be dismissed; but in view of the relation existing between these parties, and the fact that the defendant has been most generously dealt with by her mother, I think it is a case where the court is justified in exercising its discretionary power in regard to the matter of costs, and consequently none are allowed to either party."

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*J. M. B. Stevens,* for appellant.  *Arthur E. Sutherland,* for respondents.

LEWIS, J.  A proper disposition of this case was made by the trial court. Judgment should be affirmed, upon the opinion of the trial justice. All concur.

---

PEOPLE *ex rel.* DAY *v.* TAX COMMISSIONERS.

(*Supreme Court, Special Term, New York County.* November 20, 1891.)

TAXATION—BONDS DEPOSITED IN OTHER STATES—RESIDENT TRUSTEE.
   Under 2 Rev. St. c. 13. tit. 1, § 1, which provides that all personal estate "within this state" shall be liable to taxation, and title 2, § 5, which provides that every person shall be assessed for all personal estate "in his possession" or "under his control" as trustee, a resident trustee is not liable to taxation for bonds deposited without the state, under the joint control of his two non-resident co-trustees, though secured by mortgages on property within the state; and the fact that the trustees meet, and take action relative to their trust, within the state, is immaterial.

Proceeding by the people, on the relation of Henry Day, against the tax commissioners, to vacate an assessment on personal property. Assessment modified.